| | |
|---|---|
| KEVIN ANDREW POWELL, ) ) Petitioner, ) ) vs. ) ) ) KIERAN J. SHANAHAN, ) ) ) Respondent. ) _____ ) | **ORDER** |

**THIS MATTER** comes before the Court on Respondent's Motion for Summary Judgment. (Doc. No. 7).

**I.     BACKGROUND**

On August 29, 2011, Kevin Andrew Powell, a prisoner of the State of North Carolina, was found guilty by a jury in Mecklenburg County Superior Court of second-degree murder. (Doc. No. 8-17 at 24: Trial Tr.; Doc. No. 8-23 at 20: Record on Appeal). The trial court sentenced Petitioner as a Prior Record Level II offender in the presumptive range to 189 to 236 months of imprisonment. (Doc. No. 8-23 at 24). Petitioner was represented by Eric Bach at trial. Petitioner appealed his convictions to the North Carolina Court of Appeals through counsels Dianne Jones McVay and Chiege O. Kalu Okwara.

On December 2, 2011, before settling the record on appeal, Petitioner, through counsel, filed a motion for appropriate relief ("MAR") in the North Carolina Court of Appeals. (Doc. No. 8-18). On December 13, 2011, the State filed a response, and on December 15, 2011, the North

1

Carolina Court of Appeals dismissed the MAR. (Doc. Nos. 8-19; 8-20). Petitioner then filed a direct appeal with the North Carolina Court of Appeals and on October 2, 2012, the court affirmed Petitioner's conviction and sentence in a published opinion. State v. Powell, __ N.C. App. __, 732 S.E.2d 491 (2012). Petitioner did not seek discretionary review from the North Carolina Supreme Court.

On July 8, 2013, Petitioner filed a pro se MAR with the Mecklenburg County Superior Court. (Doc. No. 8-27). On July 12, 2013, the MAR was denied. (Doc. No. 8-28). On July 31, 2013, Petitioner filed a pro se petition for writ of certiorari with the North Carolina Court of Appeals. (Doc. No. 8-29). The State filed a response on August 12, 2013, and on August 15, 2013, the court denied the petition. (Doc. Nos. 8-30; 8-31). On August 28, 2013, Petitioner placed his petition in the prison system for mailing, and the petition was stamp-filed by this Court on September 3, 2013. (Doc. No. 1 at 1; 14). Petitioner brings the following alleged grounds for relief in the petition: (1) the State failed to disclose exculpatory evidence and permitted false testimony; (2) Petitioner received ineffective assistance of counsel on the ground that his trial counsel failed to call certain fact witnesses to testify; (3) Petitioner is actually innocent and the State failed to present sufficient evidence of his guilt; and (4) Petitioner received ineffective assistance of counsel on the ground that his trial counsel failed to object when the State improperly vouched for a witness' credibility.

On November 26, 2013, Respondent filed the pending motion for summary judgment. (Doc. No. 7). On December 4, 2013, this Court entered an Order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), granting Plaintiff fourteen days to respond to the summary judgment motion. (Doc. No. 9). On January 13, 2014, Petitioner filed a response to

the summary judgment motion.[1] (Doc. No. 12).

The North Carolina Court of Appeals summarized the facts from Petitioner's trial as follows:

> The evidence presented at trial tended to show the following: On 10 March 2007, Latarshia Grant, the girlfriend of the victim, Jamarr Linell Flowers, dropped Flowers off at his home around 9:00 p.m. Grant returned to Flowers's home between 10:30 and 11:00 p.m. and noticed that "the wood off the door was gone." When she pushed through the door, Grant saw Flowers lying dead on the floor. Grant immediately called 911.
>
> When law enforcement officers arrived, they observed that Flowers had been shot six times at close range. Law enforcement officers also found a mobile phone on the floor next to Flowers that did not belong to him. Through their investigation of the murder, law enforcement officers determined that the phone belonged to Defendant's employer and that the employer had given the phone to Defendant. Law enforcement officers later determined that Defendant received a call from his girlfriend at 10:40 p.m. and that the call was transmitted to Defendant's phone by a cell phone tower located less than one mile from Flowers's home.
>
> Thereafter, Defendant was interviewed by law enforcement officers and admitted that the phone was his, but denied that he had been at the crime scene. After his interview, Defendant was arrested. At trial, State's witness Etoyi Blount testified that, while sharing a jail cell with Defendant and several other men following Defendant's arrest, Blount heard one of the men ask Defendant how police had "caught" Defendant for Flowers's murder:
>
>> And [Defendant] had told him that—[Defendant] told him that the police had found his phone, or either he wouldn't be in jail if the police hadn't found his phone. And then the guy asked [Defendant], Well, how did the police get your phone? And [Defendant] said, I must have dropped it after I killed him.
>
> Following the presentation of evidence, the trial court instructed the jury on both first- and second-degree murder. Thereafter, the jury returned a verdict of guilty of second-degree murder, and the trial court sentenced Defendant, as a Level II offender, to 189-236 months imprisonment.

---

[1] Petitioner's response is in the form of a memorandum. He has not presented any admissible evidence, i.e., affidavits, in his response to the summary judgment motion.

State v. Powell, __ N.C. App. __, 732 S.E.2d 491, 493 (2012).

## II. STANDARD OF REVIEW

A. Summary Judgment Standard

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. FED. CIV. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

B. Section 2254 Standard

In addition to the motion for summary judgment standard set forth above, this Court must also consider the Petition for Writ of Habeas Corpus under the requirements set forth in 28 U.S.C. § 2254. Section 2254(d) provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Tice v. Johnson, 647 F.3d 87, 103 (4th Cir. 2011).

A claim is considered "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Young v. Catoe, 205 F.3d 750, 755 (4th Cir. 2000) (quoting Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999)). A state court adjudication is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "It is not enough for us to say that, confronted with the same facts, we would have applied the law differently; we can accord [the petitioner] a remedy only by concluding that the state court's application of the law in his case was objectively unreasonable." See Tice, 647 F.3d at 103 (citing Williams v. Ozmint, 494 F.3d 478, 483-84 (4th Cir. 2007)). "[W]e will not discern an unreasonable application of federal law unless 'the state court's decision lies well outside the boundaries of permissible differences of opinion.'" Id. at 108 (quoting Goodman v. Bertrand, 467 F.3d 1022, 1028 (7th Cir. 2006)).

In addition, "[a] federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Walker v. Martin, 131 S.Ct. 1120, 1127 (2011) (internal quotations and citations omitted). "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." Id.

5

(citation omitted). A procedural default also occurs "when a habeas petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." Hyman v. Keller, No. 10–6652, 2011 WL 3489092, at *9 (4th Cir. July 21, 2011) (quoting Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998)); see also 28 U.S.C. § 2254(b)(1)(A).

Section 2254's exhaustion requirement demands that a petitioner give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." Larry v. Branker, 552 F.3d 356, 366 (4th Cir. 2009) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)). However, a petitioner may overcome a finding of procedural default by showing cause and prejudice arising from the asserted constitutional error. McCarver v. Lee, 221 F.3d 583, 591–92 (4th Cir. 2000). To show "cause," a petitioner may make "a showing that the factual or legal basis for the claim was not reasonably available to counsel." Id. at 591 (quoting McCleskey v. Zant, 499 U.S. 467, 494 (1991)). To establish "prejudice," a petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 592 (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

A habeas petitioner may also overcome his procedural default by demonstrating that the court's failure to consider the claim will result in a fundamental miscarriage of justice. Hedrick v. True, 443 F.3d 342, 359 (4th Cir. 2006) (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)). The "fundamental miscarriage of justice" exception applies only to a narrow class of

cases involving extraordinary instances "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." Dretke v. Haley, 541 U.S. 386, 392-94 (2004) (citing Murray v. Carrier, 477 U.S. 478, 494–96 (1986)).

### III. DISCUSSION

#### A. Petitioner's Ground One

In his first ground for relief, Petitioner contends that the State failed to disclose exculpatory evidence and failed to correct false testimony. Specifically, Petitioner contends that the State had been informed that Jacqueline McClurken ("McClurken"), a member of the victim's family, told Petitioner's family during a lunch break in the sentencing hearing that she, in turn, had been told by Latarshia Grant ("Grant"), the victim's girlfriend, that Grant believed "three other individuals were responsible for the said crimes." (Doc. No. 1 at 16). Petitioner contends that the State failed to disclose this information to Petitioner and his counsel and also failed to correct Grant's testimony when she "testified contrarily at trial." (Id.). Petitioner first raised this claim in his MAR, and the MAR Court denied the claim on the merits.

Under clearly established Supreme Court law as determined in Brady v. Maryland, the prosecution, as a matter of due process, must disclose to the defendant evidence that is both favorable and material to either his guilt or punishment. 373 U.S. 83, 87 (1963). "Impeachment evidence . . . as well as exculpatory evidence, falls within the Brady rule." United States v. Bagley, 473 U.S. 667, 676 (1985). A prosecutor also has the duty to learn of and disclose any favorable and material evidence known to others acting on the government's behalf in the case, including investigating law enforcement officers. Kyles v. Whitley, 514 U.S. 419, 438 (1995).

Brady is not violated, however, where the substance of the undisclosed information could

have been discovered through due diligence by the defendant.  Barnes v. Thompson, 58 F.3d 971, 976 n.4 (4th Cir.), cert. denied, 516 U.S. 972 (1995).  Moreover, undisclosed evidence is only "material" when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. . . . A reasonable probability of a different result is . . . shown when the government's evidentiary suppression undermines confidence in the outcome of the trial."  Kyles, 514 U.S. at 433-34 (internal quotation marks and citations omitted).  "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."  United States v. Agurs, 427 U.S. 97, 109-10 (1976).  Ultimately, the criminal defendant or habeas petitioner has the burden of establishing all the elements of a Brady claim.  See Fullwood v. Lee, 290 F.3d 663, 685 (4th Cir. 2002).

Relatedly, the prosecutor has a constitutional duty to correct testimony the prosecutor knows to be false.  See Strickler v. Greene, 527 U.S. 263 (1999).  Specifically, in Napue v. Illinois, 360 U.S. 264, 269 (1959), the Supreme Court held that perjury relating to the credibility of a witness should be corrected if the prosecutor knows of its falsity.  In Giglio v. United States, 405 U.S. 150, 154 (1972), the Court expanded on Napue and held that if other attorneys in the prosecutor's office knew of the falsity of testimony, it did not matter that the prosecutor did not personally know of the falsity.  As with a Brady claim, a criminal defendant or habeas "[p]etitioner bears the burden of establishing this claim."  Smith v. Gibson, 197 F.3d 454, 458 (10th Cir. 1999).

The MAR Court's order did not result in a decision that was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme

Court–specifically, Brady, Napue, and Giglio. Nor was the MAR Court's order based on an unreasonable determination of facts, in light of the evidence presented in the state court proceedings. Here, a review of the record shows that the State did not violate Brady by withholding any information about either McClurken or Grant's alleged statements to McClurken, nor did the State violate Napue/Giglio during Grant's testimony. First, with respect to the Napue/Giglio claim, Petitioner has not identified any specific statement in Grant's testimony that he believes to be false. Assuming Petitioner is contending that Grant falsely testified that she believed Petitioner was involved in the shooting or that she had not heard that there were "three other individuals" involved, as she allegedly told McClurken, the transcript shows that Grant never made any such statement during her testimony. See (Doc. No. 8-8 at 2-23). She was never asked whether she personally believed Petitioner was involved, nor was she asked what the rumors were regarding the identity of the perpetrator or perpetrators of the crime. As such, assuming Grant did tell McClurken that she had heard and believed that three other individuals were involved and that Petitioner was not involved, Grant never testified to the contrary at trial. Because there was no false testimony, let alone testimony that the State knew to be false, there was nothing for the State to correct pursuant to Napue and Giglio.

Next, as for Petitioner's Brady claim, the Court first finds that the evidence on summary judgment shows that the State complied with all pre-trial disclosure requirements and the State disclosed, in particular, potential evidence that three people, not including Petitioner, were involved in the shooting. In a motion for a protective order, the State represented that it had provided discovery pursuant to N.C. GEN. STAT. § 15A-903, and Petitioner's response to that motion indicated that Petitioner had, in fact, received discovery. (Doc. No. 8-21 at 16-20). Such

9

discovery would have included "the complete files of all law enforcement agencies, investigatory agencies, and prosecutors' offices involved in the investigation of the crimes committed or the prosecution of the defendant." N.C. GEN. STAT. § 15A-903(a)(1). As such, the pre-trial discovery from the State would have included the statements of investigating officers, some of which Petitioner later submitted as Exhibit Numbers Two and Three to his MAR. (Doc. No. 1 at 44-46). In particular, Exhibit Number 2 notes that a neighbor of the victim told law enforcement that: (a) "he heard about 5-6 shots coming from the victim's area"; (b) "it sounded as if the shot's [sic] came from somewhere inside"; and (c) "he saw several Hispanic males running from the victim's apartment and a couple run into building 6518 apartment #5." (Id. at 44).

Exhibit No. 3, in turn, notes that Grant told law enforcement that (a) she had been "informed that Keith Cureton and 'Felicia' were involved"; (b) "the victim had bought marijuana from 'Keith' in the past"; and (c) she had been informed that "'Felicia' supposedly knocked on the victim's door and 'Keith' shot the victim first in the leg." (Doc. No. 1 at 46). Indeed, the record clearly shows that both Petitioner's counsel and the prosecutor were aware of these statements in the law enforcement files since the State filed a motion in limine to preclude the defense from introducing evidence of third-party guilt that (1) did not "point[] directly to the guilt of some specific person," and (2) was not "inconsistent with the defendant's guilt." (Doc. No. 8-21 at 50).

Petitioner's Brady claim relates to a statement allegedly made by Grant to McClurken during the trial itself—specifically during the lunch break on the day the verdict was rendered— that Grant believed that three other individuals killed the victim. At the conclusion of the sentencing hearing, defense counsel stated for the record that he learned that Petitioner's family

10

had spoken with McClurken during the lunch break that day and that McClurken told them that she had heard from Grant that Petitioner was not involved in the shooting and "that three other people were involved." (Doc. No. 8-17 at 39-40). After the court noted that the issue would "have to be the subject of a motion for appropriate relief," the prosecutor stated:

> For the record, when we approached the bench, I also shared with the Court that after Ms. Grant's testimony, which was last week, Ms. McClurken approached me and said that Ms. Grant has said that she thought three people were involved, and Ms. McClurken wondered how Ms. Grant would know that. <u>I shared that with Mr. Bach the same day that information was shared with me</u>. So this is not new – the State would contend this is not new information. <u>This was shared with the defense during the course of trial</u>. And I asked Mr. Bach, since I'm telling you this information now, do you want me to reduce it to writing, or is this sufficient? And I contend he conceded that it was sufficient for me to tell him in court.

(Id. at 40-41) (emphases added). Petitioner's trial counsel agreed that the State had, in fact, disclosed that Grant had stated that she believed three people were involved, but defense counsel stated that "the main distinction . . . is that . . . the statement is that [Petitioner] wasn't one of the three people involved, which seems to be the new information . . . , which makes it more of a complex situation."[2] (Id. at 41).

---

[2] Respondent argues in its brief that the prosecution indicated to the Court that it had disclosed to defense counsel Grant's statement that three people were involved in the shooting, and Respondent states that defense counsel "agreed that the State had, in fact, made such a disclosure. Accordingly, contrary to Petitioner's contention, the State <u>did</u> disclose the information from McClurken regarding Grant's alleged belief <u>that three other individuals</u> were involved in the shooting." (Doc. No. 8 at 10) (emphases added). This latter assertion by Respondent is simply incorrect. Indeed, Respondent specifically omits in its brief the fact that, although defense counsel agreed that the State had disclosed Grant's statement that she believed <u>three people were involved in the shooting</u>, counsel asserted that the State <u>did not</u> disclose the statement by Grant that "three <u>other</u> individuals"—i.e., three individuals, <u>not including Petitioner</u>—were involved in the shooting. As quoted above, defense counsel specifically argued that this was "the main distinction" that "makes it more of a complex situation." Indeed, a statement of belief that "three people" were involved in the shooting does not exclude Petitioner as the shooter, whereas a statement of belief that "three other people" were involved in the shooting expressly excludes Petitioner as the shooter. In the end, as the Court concludes, <u>infra</u>,

11

Here, even assuming that Grant did, in fact, state to McClurken that she believed that three people, not including Petitioner, were involved in the shooting, and even assuming that the prosecution did not disclose this to defense counsel during the sentencing hearing, the MAR Court's denial of this claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law. First, the statement was not material and was, therefore, not subject to the disclosure requirements under Brady. McClurken's statement about Grant's statement to her concerning Grant's personal belief about the perpetrators of the crime would not have been admissible based on speculation, multiple levels of hearsay, and a lack of relevance. See State v. Rose, 339 N.C. 172, 191-92, 451 S.E.2d 211, 222 (1994); Hammond v. Hall, 586 F.3d 1289, 1308 (11th Cir. 2009) .

Even if the evidence could have been admitted, because Grant was not a witness to the shooting what she may have personally believed or not believed after hearing rumors about the crime would not have had any impact on the proceeding. See (Doc. No. 1 at 46). In sum, there is not a "reasonable probability" that "the result of the proceeding would have been different" had the defense introduced evidence of Grant's statement about the shooting. Kyles, 514 U.S. at 433-34. Even more importantly for purposes of habeas review under the AEDPA, even if the MAR Court's order was somehow contrary to or an unreasonable application of Brady and its progeny, the result did not have a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 622 (1993). For all these reasons, Petitioner's first ground for relief is without merit.

---

any alleged non-disclosure of the statement by Grant does not warrant habeas relief, but the Court is nevertheless troubled by Respondent's omission in its brief of the very crux of defense counsel's argument during the sentencing hearing regarding the alleged non-disclosure by the prosecution.

In sum, Petitioner's first ground for relief is dismissed.

B. Petitioner's Ground Two

In Petitioner's second ground for relief, Petitioner contends that he received ineffective assistance of counsel on the ground that his trial counsel failed to "form a meaningful relationship with [Petitioner]" and failed to interview and call important fact witnesses to testify at the trial, including "an eye witnesses who observed, on date and time of alleged offense, three [H]ispanic males and a couple (implying male and female) run from the residence of the deceased immediately after shots were fired and a second witness who had evidence disclosing the same." (Doc. No. 1 at 17). Petitioner contends that he received ineffective assistance of counsel because his attorney failed to investigate and call as a witness Ismael Quintana ("Quintana"), a neighbor of the victim, who allegedly told law enforcement that: (a) "he heard about 5-6 shots coming from the victim's area"; (b) "it sounded as if the shot's [sic] came from somewhere inside"; and (c) "he saw several Hispanic males running from the victim's apartment and a couple run into building 6518 apartment #5."[3] (Doc. No. 1 at 44).

Petitioner first raised this claim in his MAR, and the MAR Court summarily denied the claim on the merits. The MAR Court's adjudication of this claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law, nor was it based on an unreasonable determination of facts, in light of the evidence presented in the state court proceedings. First, in a motion to withdraw as counsel, Petitioner's trial counsel informed the trial court that: (a) "[t]he Defendant has not cooperated with preparing a defense"; (b) "[t]he

---

[3] Respondent notes in its brief that Petitioner erroneously claims in his petition that Quintana said he saw "three Hispanic males and a couple (implying male and female) run from the residence of the decreased." (Doc. No. 1 at 17).

13

Defendant asserts that he has witnesses that he wishes to call for trial, but he has refused to provide this information to counsel"; and (c) Petitioner "refused to participate" in meetings with a private investigator. (Doc. No. 8-21 at 21-22). It is well-settled that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. . . . In particular, what investigation decisions are reasonable depends critically on such information." Strickland, 466 U.S. at 691. To the extent Petitioner is complaining that his attorney did not "form a meaningful relationship" with him or did not present a strong enough defense, Petitioner cannot fault his trial attorney for Petitioner's own refusal to cooperate. Further, to the extent Petitioner bases his ineffective assistance of counsel claim on his attorney's alleged failure to investigate, Petitioner has presented no evidence of what his attorney did or did not do as part of a pretrial investigation. Rather, Petitioner presents merely unsupported and conclusory allegations, which are insufficient to warrant either an evidentiary hearing or habeas relief. Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992). Petitioner's counsel may well have contacted Quintana and attempted to ask him questions about what he saw on the night of the shooting. Indeed, Petitioner's counsel was clearly aware of Quintana and his statement to police, as counsel asked Sergeant Michael Burke on cross-examination at trial about the report containing the statement from "Mr. Contana [sic]" and whether anyone ever followed up on that particular report. (Doc. No. 8-10 at 42-43).

Moreover, Petitioner cannot demonstrate that his trial counsel was deficient in failing to call Quintana as a defense witness. In addition to the fact that decisions on which witnesses to call at trial are strategic decisions entitled to deference, Strickland, 466 U.S. at 689-90, the trial court would have excluded such evidence anyway, and thus, counsel could not have been

14

deficient. Cf. Moody v. Polk, 408 F.3d 141, 151 (4th Cir. 2005) ("Counsel is not required to engage in the filing of futile motions."), cert. denied, 546 U.S. 1108 (2006). Specifically, as the State correctly noted in its motion in limine, "'[w]here the evidence is proffered to show that someone other than the defendant committed the crime charged, admission of the evidence must do more than create mere conjecture of another's guilt in order to be relevant. Such evidence must (1) point directly to the guilt of some specific person, and (2) be inconsistent with the defendant's guilt.'" (Doc. No. 8-21 at 50 (quoting State v. May, 354 N.C. 172, 176, 552 S.E.2d 151, 154 (2001), cert. denied, 535 U.S. 1060 (2002))). The fact that Quintana allegedly saw "several Hispanic males running from the victim's apartment and a couple run into building 6518 apartment #5" did not negate Petitioner's presence at the scene of the crime nor did it exclude Petitioner as the actual shooter. Petitioner's counsel, therefore, cannot be considered deficient for failing to call a witness to testify when that witness' testimony would have been excluded.

Further, even if the evidence could have been admitted, Petitioner cannot demonstrate prejudice under Strickland because there is not a substantial likelihood that the jury would have reached a different verdict. Harrington, 131 S. Ct. at 792 (holding that in assessing prejudice under Strickland, "[t]he likelihood of a different result must be substantial, not just conceivable"). The evidence of Petitioner's guilt would have remained undisturbed and uncontradicted had Petitioner's counsel called Quintana to testify and had Quintana testified consistent with his statement to police. That is, even if Quintana were allowed to testify that he saw three Hispanics and a couple run from the victim's residence, the fact remains that Petitioner's phone was found on the floor next to the victim and cell tower records placed Petitioner's phone less than a mile from the victim's residence around the time of the murder. In

15

sum, Petitioner has failed to demonstrate either deficiency or prejudice under Strickland.  Thus, the MAR Court's denial of this claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law.

In sum, Petitioner's second ground for relief is dismissed.

C. Petitioner's Ground Three

In Petitioner's third ground for relief, he contends that his conviction and sentence were obtained in violation of due process on the ground that he is "actually innocent of the underlying offense" and that the State failed to produce sufficient evidence of his guilt. (Doc. No. 1 at 19). Petitioner raised the claim of insufficient evidence on direct appeal, but he failed to then raise the issue in a timely filed petition for discretionary review ("PDR") to the North Carolina Supreme Court, pursuant to N.C. R. APP. P. 15. The claim, therefore, is non-exhausted. See O'Sullivan v. Boerckel, 526 U.S. 838, 839-40 (1999) (claims not raised in petition for discretionary review to state's highest court from intermediate state appellate court on direct review are non-exhausted). Moreover, if Petitioner were to return to state court and attempt to raise the claim to the state Supreme Court, a PDR would no longer be available to him as the time for filing such a petition has long since expired. See N.C. R. APP. P. 15(b) ("A petition for review following determination by the Court of Appeals shall be similarly filed and served within fifteen days after the mandate of the Court of Appeals has been issued to the trial tribunal."); N.C. R. APP. P. 32(b) ("Unless a court orders otherwise, its clerk shall enter judgment and issue the mandate of the court twenty days after the written opinion of the court has been filed with the clerk."). Petitioner's failure to present his claim regarding the sufficiency of the evidence to the North Carolina Supreme Court in a timely PDR, thus, renders his claim procedurally defaulted for

16

purposes of this habeas proceeding. See O'Sullivan, 526 U.S. at 848.

Next, even if this claim were not procedurally defaulted, the Court notes that Petitioner's claim of being "actually innocent" is not a recognized ground for habeas relief. See McQuiggin v. Perkins, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."). To the extent that Petitioner is arguing that the evidence was insufficient to convict him, the clearly established Supreme Court law governing this Court's review of such a claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); In Re Winship, 397 U.S. 358, 362 (1970).

Petitioner argued on direct appeal that the evidence was insufficient to convict him, and the North Carolina Court of Appeals denied the claim, stating:

> Here, the uncontradicted evidence established that Defendant's cell phone was found next to the victim, cell phone records showed that Defendant's cell phone was located within one mile of the murder scene at the approximate time of the murder, Defendant gave inconsistent statements about his whereabouts at the time of the murder, and a witness testified that after his arrest Defendant stated, "I must have dropped [my phone] after I killed him." Taken in the light most favorable to the State, giving the State the benefit of all reasonable inferences, and leaving for the jury any questions of witness credibility, this evidence was "adequate to convince a reasonable mind to accept a conclusion" that Defendant killed Flowers and thereafter dropped his cell phone at the scene. Whether the evidence proved Defendant was the perpetrator was a question for the jury. Accordingly, the trial court did not err in denying Defendant's motion to dismiss for insufficiency of the evidence. This argument is overruled.

Id. at __, 732 S.E.2d at 498 (internal citations and emphasis omitted). The North Carolina Court of Appeals' adjudication of Petitioner's sufficiency of the evidence claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law. Nor is the opinion

based on an unreasonable determination of facts, in light of the evidence presented in the state court proceedings. See Cullen, 131 S. Ct. at 1389-99; Harrington, 131 S. Ct. at 784-85. Accordingly, Petitioner is not entitled to habeas relief on this ground.

In sum, Petitioner's third ground for relief is dismissed.

D. Petitioner's Ground Four

In Petitioner's fourth ground for relief, he contends that he received ineffective assistance of counsel on the ground that his trial counsel failed to "make proper objections to the State's prosecutor vouching for [the] credibility of [a] State witness." (Doc. No. 1 at 20). Specifically, Petitioner contends his attorney should have objected when the prosecutor allegedly vouched for the credibility of Etoyi Blount, Petitioner's cell mate in the Mecklenburg County jail, who overheard Petitioner state that he must have dropped his cell phone after he killed the victim. (Doc. No. 8-12 at 4). Petitioner did not raise this claim either on direct appeal or in his MAR. On direct appeal, appellate counsel argued that the State improperly vouched for a witness' credibility, but counsel did not specifically raise this as an ineffective assistance of counsel claim. See (Doc. No. 8-24 at 36-41). Thus, Petitioner's ineffective assistance of counsel claim is non-exhausted. See Duncan v. Henry, 513 U.S. 364, 365-65 (1995) (per curiam). Moreover, if Petitioner were to return to state court and attempt to raise his this claim, it would be considered procedurally barred since he could have raised it in his MAR. See N.C. GEN. STAT. § 15A-1419(a)(1), (b). It is well settled that the procedural default rule of N.C. GEN. STAT. § 15A-1419(a)(1) is an adequate and independent state ground precluding habeas review. See Boyd v. French, 147 F.3d 319, 332 (4th Cir. 1998), cert. denied, 525 U.S. 1150 (1999). For these

reasons, Petitioner's fourth ground for relief is non-exhausted and procedurally defaulted.[4]

In sum, Petitioner's fourth ground for relief is dismissed.

**IV.    CONCLUSION**

For the reasons stated herein, Respondent is entitled to summary judgment as to all of Petitioner's claims.

**IT IS, THEREFORE, ORDERED** that:

1. Respondent's Motion for Summary Judgment, (Doc. No. 7), is **GRANTED**, and the petition is dismissed.

2. It is further ordered that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the

---

[4] Respondent correctly argues in its brief that Petitioner's ineffective assistance of counsel claim likewise fails on the merits because the prosecutor's statements, in fact, did not constitute improper vouching, but the Court does not reach the merits since the claim is non-exhausted.

dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: April 15, 2014

Frank D. Whitney
Chief United States District Judge